## 15-1924

## UNITED STATES COURT OF APPEALS
## FOR THE
## FOURTH CIRCUIT

**DURHAM SCHOOL SERVICES, LP,**

**Plaintiff - Appellant,**

**v.**

**GENERAL DRIVERS, WAREHOUSEMEN
AND HELPERS LOCAL UNION NO. 509
a/w International Brotherhood of Teamsters**

**Defendant - Appellee.**

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA at CHARLESTON

## BRIEF FOR APPELLEE TEAMSTERS LOCAL 509

Jonathan G. Axelrod
Beins, Axelrod, P.C.
1625 Massachusetts Avenue, Suite 500
Washington, DC   20036
202-328-7222
202-328-7030 (telecopier)
jaxelrod@beinsaxelrod.com

Counsel for the Appellee Teamsters Local
Union No. 509

December 14, 2015

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Fourth Circuit Local Rule 26.1, Appellee Teamsters Local Union No. 509 states that it is not a publicly held corporation, that no publicly held corporation owns any of its stock, and that it has no parent corporation.  Durham states that its English parent corporation has an interest in the outcome of this litigation and that at least 10% of its parent corporation is publicly owned.

_____/s/ Jonathan G. Axelrod_____
Jonathan G. Axelrod
Beins, Axelrod, P.C.
1625 Massachusetts Avenue, Suite 500
Washington, DC   20036
202-328-7222
202-328-7030 (telecopier)
jaxelrod@beinsaxelrod.com
jkeating@beinsaxelrod.com

Counsel for Appellee Teamsters Local Union No. 509

December 14, 2015

# TABLE OF CONTENTS

PAGE

CORPORATE DISCLOSURE STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

STATEMENT OF JURISDICTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE ISSUE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

UNDISPUTED MATERIAL FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.    The Parties, their Contract, and the Piedmont Grievance Procedure
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    B.    The Discharge of Marquette Cooper Alston and the Resulting Grievance
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    C.    Post-hearing events are limited to the meaning of the Panel decision
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

SUMMARY OF THE ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

I.    THE STANDARD OF REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

II.    THE DISTRICT COURT PROPERLY ENFORCED THE ARBITRATION
AWARD. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

    A.    Courts must enforce an arbitration award which draws its essence from
the contract. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

    B.    Durham concedes that decisions of the Piedmont Grievance Committee
are considered arbitration awards. . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

    C.    The Alston Award draws its essence from the contract. . . . . . . . . . . 21

        1.    The Piedmont Grievance Committee properly processed the
Alston grievance and Local 509's Point of Order. . . . . . . . . . 23

2.     The Piedmont Grievance Panel decision on Local 509's Point of Order drew its essence from the CBA. . . . . . . . . . . . . . . . . . 25

D.     The Panel did not deprive Durham of a fair hearing. . . . . . . . . . . . 31

E      Although Durham has expressly abandoned its public policy assertion, it has raised public policy to inflame sentiment against Ms. Alston . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

F.     If the Court vacates the Alston Award, it must remand the case to the Piedmont Grievance Committee. . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

REQUEST FOR ORAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

CERTIFICATE OF COMPLIANCE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

# TABLE OF AUTHORITIES

PAGE

**CASES**

*Auto Workers v. NLRB (Gyrodyne Co.)*, 459 F.2d 1329 (D.C. Cir. 1972). . . . . . . 28

*Bakery & Confectionery Union & Indus. Int'l Pension Fund v. Ralph's Grocery Co.*, 118 F.3d 1018 (4ᵗʰ Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Barrentine v. Arkansas Best Freight System, Inc.*, 450 U.S. 728 (1981). . . . . . . . 21

*Century Indemnity Co. v. AXA Belgium*, 2012 U.S. Dist. LEXIS 136472 (S.D. N.Y. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Clinchfield Coal Co. v. District 28, UMW*, 720 F.3d 1365 (4ᵗʰ Cir. 1983). . . . . . . 31

*Dulin v. Board of Commissioners of the Greenwood Leflore Hospital*, 646 F.3d 232 (5ᵗʰ Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Eastern Associated Coal Corp. v. Mine Workers*, 531 U.S. 57 (2000). . . . . . . . . 20

*Fukaya Trading Co. S.A. v. Eastern Marine Corp.*, 322 F.Supp. 278 (E.D. La. 1971). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*General Drivers Local No. 89 v. Riss*, 372 U.S. 517 (1963). . . . . . . . . . . . . . . . . 21

*Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002). . . . . . . . . . . . . . . . 24

*Interstate Circuit, Inc. v. United States*, 306 U.S. 208 (1939). . . . . . . . . . . . . . . 28

*Island Creek Coal Co. v. Mine Workers District 28*, 29 F.3d 126 (4ᵗʰ Cir.), *cert. denied*, 513 U.S. 1019 (1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*John Wiley & Sons v. Livingston*, 376 U.S. 543 (1964). . . . . . . . . . . . . . . . . . 24, 25

iv

*Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 1015 (2001). . . . . . . 20

*McDonnell Douglas Corp. v. Green,* 411 U. S. 792 (1973). . . . . . . . . . . . . . . . . 28

*Mine Workers District 17 v. Marrowbone Development Co.*, 232 F.3d 383 (4th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Mountaineer Gas Co. v. OCAW*, 76 F.3d 606 (4th Cir. 1996). . . . . . . . . . . . . . . 20

*National Federation of Independent Business v. Sebelius*, 567 U. S. ____ (2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Paperworkers v. Misco, Inc.*, 484 U.S. 29 (1987). . . . . . . . . . . . . . . . . . . . . . 19, 26

*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000). . . . . . . . . . 27

*Rock-Tenn Co. v. Paperworkers*, 184 F.3d 330 (4th Cir. 1999). . . . . . . . . . . . . . 20

*Steelworkers v. American Manufacturing Co.*, 363 U.S. 564 (1960). . . . . . . . 28, 37

*Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593(1960). . . . . . . 19, 28

*Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574 (1960). . . . . . 19, 28

*Teamsters Local 171 v. Keal Driveaway Co.*, 173 F.3d 915 (4th Cir. 1999). . . . . 21

*Teamsters Local 592 v. Tarmac America, Inc.*, Civil Action No. 3:02CV727 (E.D. Va. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*U.S. Postal Service v. American Postal Workers Union*, 204 F.3d 523 (4th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Yausa, Inc. v. International Union of Electrical Workers Local 175*, 224 F.3d 316 (4th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

**STATUTES**

09 U.S.C. §1 *et seq*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

28 U.S.C. §1291. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

29 U.S.C. §185. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 18

**MISCELLANEOUS**

Elkouri & Elkouri, HOW ARBITRATION WORKS (7th Ed. 2012). . . . . . . . . . . 30, 31

Federal Rules of Civil Procedure, Rule 50(a). . . . . . . . . . . . . . . . . . . . . . . . . . 27

ROBERT'S RULES OF ORDER NEWLY REVISED (10th Ed. 2000).. . . . . . . . . . . . 6, 24

## STATEMENT OF JURISDICTION

Durham filed suit in the United States District Court for the District of South Carolina seeking to vacate an arbitration award issued pursuant to a collective bargaining agreement. Local 509 filed a counterclaim seeking to enforce the arbitration award. The District Court had jurisdiction pursuant to 29 U.S.C. §185.

After the District Court granted Local 509's Motion for Summary Judgment, Durham filed a timely appeal. This Court has jurisdiction pursuant to 28 U.S.C. §1291.

## STATEMENT OF THE ISSUE

Whether the Alston Award issued by the Piedmont Grievance Committee should be enforced.

## STATEMENT OF THE CASE

After Durham discharged her for using her cell phone while driving a school bus, Marquette Alston filed a timely grievance. During the contractual grievance procedure, Local 509 and Ms. Alston conceded that she had used the cell phone, but sought mercy, a lesser penalty than discharge. When Durham denied the grievance, Local 509 submitted it to the Piedmont Grievance Committee, as required by the parties' collective bargaining agreement. After Durham presented its case to the Committee Panel, Local 509 raised a Point of Order asserting that the discharge was

unjust because Durham had not introduced the discharge letter as part of its case-in-chief. The Piedmont Grievance Committee upheld Local 509's Point of Order and required Ms. Alston's reinstatement.

Durham filed suit to overturn the Alston Award and Local 509 filed a counterclaim seeking its enforcement. After extensive discovery, Durham and Local 509 each filed Motions for Summary Judgment. The District Court granted Local 509's Motion and denied Durham's Motion. Durham then appealed to this court.

## UNDISPUTED MATERIAL FACTS

**A.    The Parties, their Contract, and the Piedmont Grievance Procedure**

Durham School Services, L.P. ("Durham") and General Drivers, Warehousemen and Helpers, Local Union No. 509 a/w International Brotherhood of Teamsters ("Local 509") are parties to a Collective Bargaining Agreement ("CBA") effective from August 15, 2012 through August 15, 2017 that covers all full time and regular part time school bus drivers employed by the Employer at or out of its following Charleston, South Carolina area facilities. [JA 13(¶5), 20(¶5), 71-96].

Durham employs, and Local 509 represents, approximately 400 school bus drivers who perform services for the Charleston County Public Schools. Bus drivers are responsible for physically transporting students to and from school and on various

2

field trips and are responsible for the safety of the students who ride the buses. [JA 12(¶¶4, 6), 20(¶¶4, 6)].

Article 20 of the CBA, which is entitled "Discipline," provides that "[no employee shall be disciplined, suspended or discharged without just cause" and that Durham will use progressive discipline, except that "no written warning is required for discharge for" certain specified offenses, including "text messaging or use of personal items such as cell phones while operating a passenger transport vehicle." Article 20 permits, but does not require, Durham to discharge an employee for a first offense of cell phone use. [JA 190-191, 13-14(¶7), 20(¶7), 86-87].

Discharge is not mandatory for cell phone use. Article 11, Section 1 expressly permits the Union to grieve "that the penalty assessed for a violation of the work rule was excessive and does not constitute just cause." [JA 78; Durham Brief at 23].

Article 12 of the CBA, which is entitled "Grievance Procedure," provides a procedure for resolving grievances, which are defined "as any controversy, complaint, misunderstanding or dispute arising as to the meaning, application or observance of any of the provisions of the" CBA. Step 4 of this procedure provides that if the grievance is not resolved by the parties in the first three steps, "the Union may, file the grievance to the Piedmont Grievance Committee" ("Committee") and "that the Piedmont Grievance Committee shall have the authority to hear unresolved

3

grievances submitted and heard in accordance with the Rules of Procedure of the Piedmont Grievance Committee." Committee decisions "shall be final and binding." [JA 79-80, 112, 107-108].

The Committee is a bi-partite grievance committee established by Teamster Local Unions in West Virginia, Virginia, North Carolina, South Carolina, and Florida, and by employers with which they have collective bargaining agreements.[1] Grievance Panels are composed of equal numbers of Union and Management representatives who are not employed by the parties to the grievance they will hear. A majority decision by a Committee panel is final and binding and has the force of an arbitration award. If the panel hearing a case deadlocks, the Union may submit the dispute for resolution by an arbitrator through the Federal Mediation and Conciliation Service. [JA 14(¶10), 20(¶10), 114, 117].

The Committee has promulgated Rules of Procedure contained in its By-Laws. These Rules of Procedure govern the procedures for grievance proceedings. The Rules provide that in discipline cases the employer presents first and has the burden

---

[1]Tom Houvouras is the Committee's Management Co-Chair, elected by the various company representatives. Wayne Gibbs is the Committee's Union Co-Chair, elected by the various union representatives. Each Grievance Panel also has Co-Chairs. [JA 117-118, 342-344, 403-404].

4

of proof. The Rules also expressly permit parties to raise Points of Order. [JA 14-15(¶11), 102].

The Rules provide that the Committee will meet on the fourth Wednesday and Thursday of each month to consider grievances. The Rules provide that "All sworn affidavits, emails and/or documentation on official letterhead are to be furnished to the other party by 5 :00 p.m. on the Friday before the hearing." This exchange refers to documents upon which a party intends to rely to support its case. [JA 15(¶12), 21(¶12), 101].

The Rules further provide that "[i]n the hearing of a case either party may present any evidence bearing on the facts of a particular case, and may present testimony of witnesses either in person or by sworn affidavit/notarized statement." [JA 15(¶12), 21(¶12), 101].

The Rules provide that "The Chairman presiding on the particular case shall maintain order and shall make final rulings on Points of Order, consistent with Roberts' [*sic*] Rules of Order." [JA 102]. ROBERT'S RULES OF ORDER states as follows:

> When a member thinks that the rules of the assembly are being violated, he can make a *Point of Order* (or "raise a question of order," as it is sometimes expressed), thereby calling upon the chair for a ruling and an enforcement of the regular rules.

A Point of Order takes precedence over any pending question. ROBERT'S RULES OF ORDER NEWLY REVISED §23 (10th Ed. 2000).

On April 28, 2010, a Committee panel heard a case involving Teamsters Local 509 and First Student. First Student had discharged employee Priscilla Jenkins and had issued a discharge letter as required by the contract. However, the First Student representative submitted the discharge letter to the Panel as part of her case-in-chief, but then withdrew the proffered exhibit. At the conclusion of First Student's case, Local 509 representative L.D. Fletcher raised a Point of Order asserting that First Student had not submitted the discharge letter as part of its case-in-chief. The panel upheld the Point of Order. First Student reinstated Ms. Jenkins. [JA 140-145, 193-208].

On September 28, 2011, a Committee panel heard a case involving Teamsters Local 175 and Coca-Cola. Coca-Cola had discharged employee Robert Julian Poe and had issued a discharge letter as required by its contract. However, Coca-Cola representative Alice King did not submit the discharge letter as part of her case in chief. At the conclusion of Coca-Cola's case, the Local 175 representative raised a Point of Order. He stated that Coca-Cola had failed to introduce the discharge letter. He explained that their contract required a discharge letter for a valid discharge and that Coca-Cola's failure to introduce that letter meant that there was no valid

6

discharge.  Ms. King offered to produce the discharge letter, but the panel refused to accept it after she had closed her case-in-chief.  The panel upheld Local 175's Point of Order and overturned the termination.  Coca-Cola then reinstated Mr. Poe. [JA 163-168, 209-227, 233-235, 460-469].

**B.      The Discharge of Marquette Cooper Alston and the Resulting Grievance**

On September 24, 2013, Durham terminated the employment of Marquette Cooper Alston ("Ms. Alston") for using her cell phone while operating a school bus. As required by the CBA, Durham provided both Local 509 and Ms. Alston with a copy of Alston's termination letter that same day.  Later that day, Local 509 filed a written grievance alleging that Ms. Alston had been terminated without just cause. [JA 15(¶¶15-16), 21(¶¶15-16), 265, 267].

Despite her guilt, Local 509 pursued the grievance because Ms. Alston had a long record with no prior discipline and because President Fletcher hoped that the Committee would be more lenient or have more mercy than Durham.  He knew that the Committee and neutral arbitrators had reduced the penalty from discharge to suspension despite concluding that the grievant was guilty as charged. [JA 185-186, 15(¶¶15-16), 21(¶¶15-16)].  Durham denied the grievance in writing later that same day. [JA 15(¶¶15-16), 21(¶¶15-16), 269].

7

On October 8, Local 509 President Fletcher, Business Agent Sebrina Isom and Ms. Alston met with Durham General Manager Mike Hamel (in person) and Regional Manager Dave Brabender (by telephone) to discuss the discharge. Neither Ms. Alston nor the Union denied that she had used her cell phone while driving. Rather, the Union contended that discharge was too severe and submitted three statements suggesting that Ms. Alston was dedicated to her special student passengers and their families. One statement was from the mother whose cell phone conversation with Ms. Alston led to the discharge. Two statements were from Charleston County School officials. [JA 271,275, 124-130].

After Durham again denied the grievance, on October 31 , 2013, Local 509 submitted the Alston grievance to the Committee. Local 509's submission acknowledged that Alston had been terminated, but asserted that the termination was "unjust." [JA 15-16(¶¶17-18), 21(¶¶17-18), 277, 279].

In preparation for the Committee hearing, Local 509 President Fletcher prepared a brief with relevant exhibits. Local 509 did not plan to claim that Ms. Alston was innocent of the alleged misconduct. Instead, the Union intended to argue that Ms. Alston had returned a call from a parent of a special needs child concerning a delayed pickup and that lesser discipline was appropriate under the circumstances. Attached to Local 509's draft brief were statements from parents and School Board

officials.  Essentially, Local 509 wanted the Panel to reduce the discharge to a lesser penalty.  Local 509's statements from parents and School representatives presented mitigating circumstances possibly warranting a lesser penalty than discharge. [JA 119, 122-124, 130-133, 281-292, 528-529].

The PGC scheduled the Alston grievance for its January 2014 session.  The Panel assigned to hear the case was Jim Shurling (Teamsters Local 512), Rosie Via (Teamsters Local 171), Tom Houvouras (Huntington Plating), and Steve Chambers (Atlas). [JA 133-134, 294-295, 402].

The Panel heard the Alston case on January 15, 2014.  Consistent with the Rules, Durham's attorney Dawn Blume presented Durham's case first with a written brief, live witnesses, and a videotape showing Ms. Alston using her cell phone while driving her bus.  Durham's witnesses testified about the discharge and the reasons for the discharge.  Durham's presentation did not include a copy of the discharge notice. Nor did Durham's witnesses testify that Durham had issued a discharge letter to Ms. Alston.  Ms. Blume then rested her case. [JA 294-324, 134-136, 596-600].

Following the presentation by Durham, the Panel Chairman asked Local 509's representative to present the Union's case.   Instead of presenting the case he had previously briefed, Local 509 President Fletcher raised a "Point of Order" asserting that Durham had not presented the Alston discharge letter to the Panel.  Based on his

9

prior involvement in the First Student (as Local 509 representative) and Coca-Cola (as Panel member) cases, President Fletcher asserted that an employer who does not present a discharge letter as part of its case in chief loses the discharge case. Ms. Blume then stated that she had the discharge letter, but did not introduce it as part of Durham's case-in-chief because it was undisputed that Ms. Alston had been discharged. Attorney Blume then offered to produce the discharge letter to the Panel. After the Panel refused her belated offer, Ms. Blume responded to questions from the Panel. [JA 324-327, 136-143, 248-254, 600-601].

After the parties finished discussing the Point of Order, the Panel stopped the hearing and went into Executive Session to consider the Point of Order. During the Executive Session, the Panel discussed whether the termination letter should be part of an employer's case-in-chief. Panel members discussed prior cases in which the Piedmont Grievance Committee had ruled against employers who had not introduced the termination letter. Panel members Via and Houvouras knew that Local 175 had made the same argument and had prevailed in the Coca-Cola case. The Panel discussed Committee By-Law Article VII(A), which they believed required that each party present the "moving parts" of its case.[2] They concluded that a discharge letter

_____

[2]Panel member Rosie Vie testified that the discharge letter and grievance are indispensable "moving parts" of a case. [JA 240-241]. They move the case forward.

10

was a moving part of an employer's case, just as the grievance was a moving part of a union's case. In either situation, a party failing to introduce the moving document would lose. After the Executive Session, the hearing reconvened and Co-Chair Houvouras announced that Local 509's Point of Order was upheld. The Chairman then called the next case for hearing. [JA 238-240, 243-244, 248, 411, 16-17(¶¶21-22), 21(¶¶21-22), 327-328, 607-609].[3]

By written notice dated January 19, 2014, the Piedmont Grievance Committee issued a "Billing/Case Decision Summary." The Decision stated: "Point of Order by the Union is upheld. Fee Company." The Decision contained no remedy or any further explanation. But the allocation of the fee indicated that Durham had lost the case. [JA 330, 343, 103, 608-609].[4]

---

[3]By coincidence, Ms. King watched the Alston case hearing. After the Alston decision was announced, Ms. King spoke with Mr. Houvouras. Mr. Houvouras told Ms. King that the Panel had followed the *Coca-Cola* precedent because "we had to remain consistent." Ms. King replied that she would have been happy to see the precedent abandoned. [JA 476-479, 519-520]. Ms. King later approached Ms. Blume to commiserate. Ms. King said that she had had "a very similar case and that [she] felt bad for her because [she] knew where it was going the minute – what happened, when Dawn started to present her case, she didn't even – she initially didn't even present a brief. ... I knew she wasn't going to present the termination letter. I knew it was going to be called a point of order. I saw the train wreck coming." [JA 479-480].

[4]The Committee By-Laws state as follows [JA 103]:

(continued...)

11

**C.     Post-hearing events are limited to the meaning of the Panel decision**

Durham refused to reinstate Ms. Alston. As they left the Committee hearing room, Mr. Brabender told President Fletcher that Durham would not reinstate Ms. Alston. On January 21, 2014, the School District's Director of Transportation Curtis Norman applauded Ms. Alston's discharge, but apparently was unaware of the Committee decision. [JA 171-175, 512].

In March, Local 509 Business Agent Isom and President Fletcher met with Mr. Norman and his superior, Michael Bobby, the School District's Chief of Finance and Operations, to discuss the Piedmont Grievance Committee decision. Mr. Bobby said that Durham had claimed that it had not lost the Alston case, but said that the School Board would compel Durham to reinstate Ms. Alston if Local 509 had a written decision that required her reinstatement. [JA 172, 175-177].

After meeting with Mr. Bobby, President Fletcher informed Union Co-Chair Gibbs of Mr. Bobby's comment and requested that the Committee issue a decision explaining the effect of upholding Local 509's Point of Order. Mr. Gibbs replied that

---

[4](...continued)
On all cases presented to the Committee, there shall be a charge of fifty dollars ($50.00). The losing party to such disputed cases shall be required to pay this charge; except that in the deadlocked cases or compromise decisions, the cost is to be borne equally by contesting parties.

he had not sat on that Panel.  Sometime later, Mr. Fletcher again informed Mr. Gibbs that he needed an explanation for "Point of Order by the Union is Upheld.  Fee Company."  Mr. Gibbs said that he would call Company Co-Chair Houvouras.  Because nothing happened, President Fletcher called Mr. Gibbs again.  This time, Mr. Gibbs said he would write a letter himself. [JA 178-179, 381-383].

Union Co-Chair Gibbs spoke with Management Co-Chair Houvouras about Mr. Fletcher's request.  Mr. Gibbs said that Durham had not reinstated Ms. Alston because it was unclear what the Committee decision required.  Mr. Gibbs proposed that they send a joint letter to the parties, but Mr. Houvouras was not interested in Mr. Gibbs' draft. [JA 384-385, 429-430].

Several weeks after his conversation with Mr. Fletcher, on March 20, 2014, Mr. Gibbs sent the following letter to President Fletcher:

> The Piedmont Grievance Committee provided the Billing/Case Decision Summary to the Durham School on January 19, 2014, in regards to the stated case above.
>
> This Decision thus means that the grievant should be returned to her position she held prior to the termination, as well as all pay during the time of her absence,  There should be no lapse of any time, benefit, or pay from the time of termination to her reinstatement.
>
> According to the Piedmont Grievance Committee By-Laws:
> Article VII – Hearing (J) This Committee shall have the authority to order full, partial or no compensation in deciding disputes and/or grievances and rendering awards.  A decision by a majority of a

13

Committee Panel shall be final and binding on all parties, including the employee and/or employees affected.

Based on this decision, the Union's grievance seeking reinstatement and payment of all lost wages and benefits prevailed.

I hope this answers any questions anyone has regarding the Piedmont Grievance Decision.

[JA 332, 381-384].

After speaking with Mr. Gibbs, Mr. Houvouras called Ms. Blume to discuss the Alston case. Mr. Houvouras asked whether Durham had refused to reinstate Ms. Alston because the Committee's decision was unclear. She replied that Durham had grounds to refuse reinstatement and that the Committee decision made no difference. Several days later, Mr. Houvouras again called Ms. Blume to inform her that Local 509 wanted a letter written to both parties explaining the Panel decision. Mr. Houvouras said that he was opposed to such a letter. [JA 428-432].

Soon after meeting with Mr. Bobby, President Fletcher called Management Co-Chair Houvouras and told him that Local 509 needed an explanation of the PGC award in the Alston case. [JA 180-182]. Believing that Mr. Gibbs would write a letter he might disagree with, Mr. Houvouras wrote to Ms. Blume and Mr. Fletcher on March 20, 2014:

As you will recall, the Union raised a Point of Order at the conclusion of the Company's case. The Committee went into Executive Session

14

and decided to grant the Union's Point of Order.  The Committee then
notified the parties that "the Point of Order by the Union is upheld."
Based on this decision the Union's grievance will prevail.

Mr. Houvouras hoped that his letter would produce a settlement. [JA 334, 435-436,
451].

Upon receipt of Mr. Houvouras' note, Durham filed this action and has refused
to reinstate Alston.

## SUMMARY OF THE ARGUMENT

In reviewing an arbitration award, including a decision of the Piedmont
Grievance Committee, the Court must enforce the award if it draws its essence from
the contract.  If the arbitrator, or the Committee Panel, was interpreting the contract,
a reviewing court cannot vacate the award merely because it disagrees with the
Panel's interpretation.  The standard of review does not permit the Court to second-
guess the Panel's interpretation of the CBA or its Rules of Procedure.

Durham blames the Piedmont Grievance Committee for the error made by its
attorney, Dawn Blume, in presenting Durham's position to the Committee Panel.
Although the CBA requires a written discharge letter for a proper termination with
just cause, Attorney Blume failed to present evidence that Durham had complied with

15

that requirement. She had the evidence, but failed to submit it as part of her case-in-chief. Local 509 challenged this failure by raising a Point of Order.

The Committee's By-Laws state that an employer has the burden of proof in discipline cases. [JA 102]. Committee precedent holds that an employer who fails to produce evidence of compliance with the contractual procedural rules for a discharge lacks just cause for the discharge or has improperly discharged the employee. Attorney Blume's error gave Local 509 the opportunity to make an unanticipated argument to the Panel. She does not get a do-over merely because President Fletcher knew more about Committee precedent than she did. [JA 708].

The Committee's By-Laws state that a Point of Order must be resolved before any pending matter. Therefore, the Panel considered Local 509's Point of Order. It was undisputed that Ms. Blume had neither mentioned the discharge letter nor offered it into evidence as part of her case-in-chief. The Panel refused to permit her to introduce the letter as rebuttal because the letter would correct her error but not rebut Local 509's assertion. The Panel then concluded that Ms. Blume's failure to introduce the discharge letter meant that Durham had not properly discharged Ms. Alston according to the standards required by the CBA.

16

The District Court correctly concluded that Panel members had "provided a basis in the by-laws and the CBA for the PGC panel's decision to uphold the Union's point of order and reinstate Alston." This Court should agree and affirm.

Equally without merit is Durham's assertion that the Panel denied Durham a fair hearing. Ms. Blume had the opportunity to present her case-in-chief with any evidence she desired. She either decided not to introduce the discharge letter or inadvertently failed to do so. The Panel did not refuse to accept any evidence Ms. Blume offered as part of her case-in-chief. The Panel's refusal to accept the discharge letter as new evidence during the discussion of the Point of Order is fully consistent with Panel Rules and precedent.

Durham has failed to prove that the Panel decision was the product of bias. First, the resolution of the Point of Order was consistent with precedent and not indicative of bias against Durham. Second, Panel member Shurling's questioning of Ms. Blume was mild in comparison to questions posed by judges and Justices during oral argument. Third, post-decision *ex parte* communications concerning the meaning of the Panel Award could not tarnish the Award itself and were prompted by Durham's assertions to Local 509 and to the School District that it had not lost the case at the Panel.

17

ARGUMENT

## I.    THE STANDARD OF REVIEW

This Court reviews *de novo* the District Court's grant of summary judgment. *Island Creek Coal Co. v. Mine Workers District 28*, 29 F.3d 126, 129 (4th Cir.), *cert. denied*, 513 U.S. 1019 (1994); *Bakery & Confectionery Union & Indus. Int'l Pension Fund v. Ralph's Grocery Co.*, 118 F.3d 1018, 1020 (4th Cir. 1997).

The essential question is whether the Alston Award draws its essence from the collective bargaining agreement and the Piedmont Grievance Committee By-Laws incorporated by the contract.

## II.    THE DISTRICT COURT PROPERLY ENFORCED THE ARBITRATION AWARD

### A.    Courts must enforce an arbitration award which draws its essence from the contract

Two federal statutes control judicial review of arbitration awards involving collective bargaining agreements. Section 301 of the Labor Management Relations Act, 29 U.S.C. §185, applies in litigation alleging a breach of a collective bargaining agreement. The Federal Arbitration Act, 9 U.S.C. §1 *et seq.*, applies in litigation involving breaches of contract generally. Both statutory provisions require enforcement of arbitration awards which draw their essence from the contract unless

18

the award was procured by corruption or violates law and public policy by requiring

the commission of an unlawful act. Durham's attempt to persuade the Court to vacate

the Alston Award and Local 509's request for enforcement must be resolved

according to those statutes.

In *Steelworkers Warrior & Gulf Navigation Co.*, 363 U.S. 574, 579-580 (1960),

the Supreme Court explained as follows:

> It is not unqualifiedly true that a collective-bargaining agreement
> is simply a document by which the union and employees have imposed
> upon management limited, express restrictions of its otherwise absolute
> right to manage the enterprise, so that an employee's claim must fail
> unless he can point to a specific contract provision upon which the claim
> is founded. There are too many people, too many problems, too many
> unforeseeable contingencies to make the words of the contract the
> exclusive source of rights and duties. One cannot reduce all the rules
> governing a community like an industrial plant to fifteen or even fifty
> pages. Within the sphere of collective bargaining, the institutional
> characteristics and the governmental nature of the collective-bargaining
> process demand a common law of the shop which implements and
> furnishes the context of the agreement. We must assume that intelligent
> negotiators acknowledged so plain a need unless they stated a contrary
> rule in plain words.

Thus, a court must enforce an arbitration award which "draws its essence from the

contract." *Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597 (1960).

In *Paperworkers v. Misco, Inc.*, 484 U.S. 29, 38 (1987), the Supreme Court

again set forth the extremely narrow grounds on which a court reviews an arbitration

award:

19

The arbitrator may not ignore the plain language of the contract; but the parties having authorized the arbitrator to give meaning to the language of the agreement, a court should not reject an award on the ground that the arbitrator misread the contract. ... The arbitrator's award settling a dispute with respect to the interpretation or application of a labor agreement must draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice. But as long as the arbitrator is <u>even arguably construing or applying the contract</u> and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision. [Emphasis supplied].

And in *Eastern Associated Coal Corp. v. Mine Workers*, 531 U.S. 57, 62 (2000), the

Court held that the fact that "a court is convinced [the arbitrator] committed serious

error does not suffice to overturn his decision."  See also *Major League Baseball*

*Players Ass'n v. Garvey*, 532 U.S. 1015 (2001).

The Fourth Circuit has identified the pole star guiding any court confronted

with a request to vacate or enforce an arbitration award: "[J]udicial review of

arbitration awards is extremely limited -- in fact, it is 'among the narrowest known

to the law.'"  *U.S. Postal Service v. American Postal Workers Union*, 204 F.3d 523,

527 (4th Cir. 2000); *Rock-Tenn Co. v. Paperworkers*, 184 F.3d 330, 333 (4th Cir.

1999).  As Durham concedes [Durham Brief at 26], "Above all, [the court] must

determine only whether the arbitrator did his job – not whether he did it well,

correctly, or reasonably, but simply whether he did it." *Mountaineer Gas Co. v.*

*OCAW*, 76 F.3d 606, 608 (4th Cir. 1996).

Within this extremely narrow scope of judicial review, the Court must consider, and should reject, Durham's effort to vacate the Alston Award.

**B.    Durham concedes that decisions of the Piedmont Grievance Committee are considered arbitration awards**

Consistent with the overriding principle that the parties' chosen dispute resolution method should be given its full authority, courts have routinely treated bipartite grievance committee decisions as arbitration awards. *General Drivers Local No. 89 v. Riss*, 372 U.S. 517 (1963); *Barrentine v. Arkansas Best Freight System, Inc.*, 450 U.S. 728, 734-736 (1981); *Teamsters Local 171 v. Keal Driveaway Co.*, 173 F.3d 915 (4th Cir. 1999). The District Court expressly cited *Teamsters Local 592 v. Tarmac America, Inc.*, Civil Action No. 3:02CV727 (E.D. Va. 2003) to conclude that a Piedmont Grievance Committee decision is entitled to the same deference as any labor arbitration award. [JA 728]. Durham concedes this much. [Durham Brief at 24].

**C.    The Alston Award draws its essence from the contract**

Contrary to Durham's assertions [Durham Brief at 18-19], the undisputed fact that Durham terminated Ms. Alston is not dispositive. Where, as here, the CBA requires a discharge letter, an oral termination is a termination, but without just cause because it was oral, not written. Durham had previously lost a discharge case at the

Piedmont Grievance Committee on a Point of Order based on its failure to give Local 509 a copy of the written discharge letter signed by the dischargee and steward, as required by the contract. In that earlier case, Local 509 raised a Point of Order that the discharge was "improper" and the Panel agreed. [JA 503-504, 510-511, 541-576].

The fact that Durham had properly complied with the CBA requirements by issuing a discharge letter to Ms. Alston is not proof to the Panel that it had done so. As Durham repeatedly asserts [Durham Brief at 30-31, 34], the Rules require a panel to make decisions on the basis of the evidence presented.

Thus, when Attorney Blume concluded her case-in-chief without documentary or testimonial evidence that Durham had issued a discharge letter to Ms. Alston with a copy to the Union as required by the CBA, President Fletcher had to decide whether to waive/ignore her error or whether to raise a Point of Order and expect the Panel to follow precedent. Knowing that waiving Ms. Blume's error could jeopardize Ms. Alston's chance of reinstatement, as a good advocate President Fletcher raised the Point of Order, and prevailed.

The Panel decided the case on the evidence Attorney Blume placed before it, not on the evidence that might have been introduced without objection had it been offered. If the Panel assumed the existence of a discharge letter, it would violate the

22

Rule that it base its decision "on the pertinent facts presented by the parties." [JA 102].

### 1.    The Piedmont Grievance Committee properly processed the Alston grievance and Local 509's Point of Order

Durham's contention that the grievance panel considering the Alston grievance failed to decide the "just cause" issue submitted to it [Durham Brief at 27-31] is based upon several misconceptions caused by Ms. Blume's presentation of her case to the Panel.   In fact, the Panel's actions were wholly consistent with arbitral practice and with the CBA.

As Durham correctly notes [Durham Brief at 29], Local 509 concedes that the Panel did not reach the merits of the discharge (whether Ms. Alston's cell phone use warranted discharge or a lesser penalty).  But the Panel did conclude that Durham had failed to comply with the contractual predicate for a discharge with just cause (a written discharge document).

Local 509's grievance [JA 267] and its submission to the Committee [JA 278] both alleged that Ms. Alston had suffered an "unjust termination."  Those documents broadly defined the issue submitted to the Panel.  The Panel's decision was "within the scope of the grievance presented" to the Panel.  *Yausa, Inc. v.  International Union of Electrical Workers Local 175*, 224 F.3d 316, 318 (4th Cir. 2000).

23

Local 509 pounced on Ms. Blume's error and raised a Point of Order challenging the adequacy of her presentation of Durham's case to the Panel, not to the merits of the discharge. The Rules of the Piedmont Grievance Committee expressly provide that ROBERT'S RULES OF ORDER applies. ROBERT'S RULES expressly states that a Point of Order takes precedence over any pending question. The Panel correctly decided that Local 509's Point of Order had to be resolved before the Panel could consider the merits of the discharge or the level of appropriate discipline.

An arbitral body, like the Piedmont Grievance Committee, is authorized to resolve procedural questions involving the grievance process[5] as well as substantive questions concerning the merits of the dispute. Whether framed as a procedural question or a substantive question, the Piedmont Grievance Committee was authorized, and required, to resolve Local 509's Point of Order.

Points of Order have been used to (a) object to the introduction of evidence not submitted to the union in advance of the hearing as required by the Piedmont

---

[5]*Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 85-86 (2002). Procedural issues include the timeliness of the filing of grievances and satisfaction of the procedural steps before arbitration. The Supreme Court has acknowledged that procedural questions sometimes cannot be resolved without consideration of the merits of the dispute. *John Wiley & Sons v. Livingston*, 376 U.S. 543, 557-558 (1964).

Grievance Committee's Rules; (b) object to a discharge issued without a written discharge letter as required by the contract; (c) object to untimely grievances, discipline or exhibits; (d) object to a union's presentation which did not include the grievance document; and (e) object to a grievance which does not list the contract article allegedly violated.   A majority ruling on a Point of Order may result in a resumption of the hearing without the disputed evidence or may be a final decision on the outcome of the grievance without regard to the merits of the grievance.  If a panel deadlocks on a Point of Order, the deadlock can be submitted to arbitration. [JA 145-146, 151-153, 157-163, 367-371, 386-391].

In sum, Durham contractually authorized the Piedmont Grievance Committee to address all issues arising from Ms. Alston's discharge, including procedural issues raised as Points of Order.  The Panel did its job in resolving the grievance by resolving the Point of Order.  A conclusion by this Court that an arbitrator lacks jurisdiction to resolve a grievance on a procedural point would be contrary to *Livingston* and to more than 75 years of arbitration practice.

## 2.    The Piedmont Grievance Panel decision on Local 509's Point of Order drew its essence from the CBA

Although Durham employs a wide variety of adjectives to disparage the Panel's decision on the Point of Order, this Court must conclude that the Panel decision was

25

based on its interpretation of the CBA and the Committee By-Laws. As the Court held in *Misco*, 484 U.S. at 38, "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." This Court lacks authority to vacate the Alston Award merely because the Court concludes that the Panel's interpretation was wrong.

Several provisions of the Piedmont Grievance Committee's By-Laws govern the evidence that must be presented to a Grievance Panel. Article VII(A) provides, in pertinent part, as follows:

> In the hearing of a case either party may present any evidence bearing on the facts of a particular case, and may present testimony of witnesses either in person or by sworn affidavit/notarized statement. All sworn affidavits, emails and/or documentation on official letterhead are to be furnished to the other party by 5:00 p.m. on the Friday before the hearing. ...

Article VII(I) provides, in pertinent part, as follows:

> The Panel members hearing any case will be obligated to make a decision <u>based on the pertinent facts presented</u> by the parties. ... [emphasis supplied].

A panel can consider a party's failure to present pertinent evidence. [JA 101-102, 395, 262, 420, 426, 438-439].

Article 20, Section 1 of the Collective Bargaining Agreement provides that to properly discipline an employee, Durham is required to issue a written document signed by the employee and a Local 509 steward, with a copy to Local 509. [JA 87]. Although it is undisputed that Durham complied with this contractual provision, the Panel did not know that because Ms. Blume did not "present" such evidence during her case-in-chief. It was not part of "the pertinent facts presented" by Attorney Bloom.

The Committee Panel concluded that the discharge letter was a "pertinent fact" as provided in the By-Laws (or "a moving part" as described by Panel member Via) and that Durham's failure to introduce the discharge letter as part of its case-in-chief was a fatal procedural defect. [JA 369, 377-381, 236, 187].

The question posed by Local 509's Point of Order was whether Durham presented a *prima facie* case despite its failure to introduce the discharge letter as part of its case-in-chief. Local 509's Point of Order was analogous to a motion under Rule 50(a) of the Federal Rules of Civil Procedure, which authorizes a court to dismiss a case if the party with the burden of proof fails to present a *prima facie* case. *Reeves v. Sanderson Plumbing Products, Inc*., 530 U.S. 133, 148-149 (2000); *Dulin v. Board of Commissioners of the Greenwood Leflore Hospital*, 646 F.3d 232, 239-240 (5th Cir. 2011). In reviewing the record, a decision-maker must draw an adverse

27

inference from a party's failure to introduce pertinent evidence in its possession. *Interstate Circuit, Inc. v. United States*, 306 U.S. 208, 226 (1939); *Auto Workers v. NLRB (Gyrodyne Co.)*, 459 F.2d 1329 (D.C. Cir. 1972).

The requirements of a *prima facie* case may be found in contract, in law, or in judicial creation. For example, it is well established that the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U. S. 792, 802 (1973), defined a *prima facie* case of employment discrimination. Perhaps more to the point, the entire body of law concerning labor arbitration developed judicially from the Supreme Court's *Steelworker Trilogy*.[6]

The Panel upheld Local 509's Point of Order, but did not explain its decision. Arbitrators are not required to explain their rationales, however helpful an explanation might be.[7] However, in depositions conducted by Durham, two of the Alston case Panel members described their rationale: an employer's failure to introduce a contractually required discharge letter as part of its case in chief is a fatal procedural error. [JA 236, 238-240, 243-244, 248, 407-410].[8] The District Court

_____

[6]*Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593(1960); *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574 (1960); and *Steelworkers v. American Manufacturing Co.*, 363 U.S. 564 (1960).

[7]*Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 598 (1960).

[8]As the District Court properly held, arbitrators enjoy a quasi-judicial immunity

(continued...)

relied upon their testimony to conclude that their Award drew its essence from the

CBA [JA 737-738]:

> Admittedly, Houvouras and Via offer differing opinions on whether the PGC panel based its decision on the merits of the Alston grievance. Specifically, Houvouras testified that the Union's point of order raised the issue that Alston was never discharged, rather than the issue that her termination was unjust.

> Q    Okay. Was there any doubt in your mind that Ms. Alston had been discharged?
> A.   Yes
> Q.   There was? So there was doubt in your mind that she had been discharged based on what?
> A.   Based on the point of order.

[JA 422-423]. Via's testimony, however, indicated that the PGC panel did not doubt the termination of Alston and made a decision based on the merits of the grievance.

> A.   At the point where the point of order came we had the complete merits that the company had to substantiate that they -- their case would support the termination of that person.
> Q.   But you didn't doubt that -- you knew that she had been terminated, right? You weren't saying she had not been terminated, right?
> A.   I don't think anybody said she wasn't terminated.

[JA 245].

---

[8](...continued)
from litigation. [JA 739]. They cannot be deposed concerning how or why they reached their decision. *Fukaya Trading Co. S.A. v. Eastern Marine Corp.*, 322 F.Supp. 278, 279-280 (E.D. La. 1971). Arbitrators may be deposed where, as here, it is alleged that their decision was the product of their corruption.

Based on their testimony, the District Court reasonably, and properly, concluded that they were interpreting the CBA and the By-Laws in upholding the Point of Order.[9]

Arbitrators generally follow precedent. Each arbitrator must decide whether to follow precedent and what weight to accord precedent. *See* Elkouri & Elkouri, How Arbitration Works, 11-1 - 11-36 (7th Ed. 2012), for an exhaustive review of the use of arbitral precedent. Of particular interest in this case, however, is the section concerning the use of precedent by permanent umpires (persons who, like the Piedmont Grievance Committee, have a permanent role in the resolution of grievances) between an employer and union and are not *ad hoc* visitors to that relationship. Regarding permanent umpires, Elkouri concluded as follows:

> If an award on a particular contract interpretation issue is final and binding only with respect to the individual grievant, there need never be "finality," and the terms and conditions of employment under which each employee works would depend on the fortuity of the predilection of each succeeding arbitrator appointed to deal repetitively with the recurrent issue. Prior awards typically have such "authoritative" force in arbitrations conducted by permanent umpires or chairs. In this regard, one umpire offered the following thought: "Where a reasonably clear precedent can be found in prior Umpire decisions, the considerations in favor of following that precedent are very strong indeed, in the absence

---

[9]It is not unusual for members of multi-member judicial or arbitral panels to provide differing rationales for a majority vote. See, e.g., *National Federation of Independent Business v. Sebelius*, 567 U. S. ____ (2012). Thus, it is irrelevant that the two deposed Panel members gave slightly different explanations for the decision is irrelevant. Despite any differences in the rationales of the four Panel members, their vote was unanimous.

of relevant changes in contract language or a showing that the precedent decision or decisions were erroneous."

Elkouri at 11-11 (citations omitted).

Decisions by permanent umpires and *ad hoc* arbitrators become part of the "existing common law of the particular plant or industry, for it is an integral part of the contract." *Clinchfield Coal Co. v. District 28, UMW*, 720 F.2d 1365, 1367, 1369 (4th Cir. 1983) (arbitrator improperly "ignored ... the consistent approach taken by other arbitrators ...."). *Clinchfield* can reasonably be interpreted to require following precedent, as the Panel did.

The Piedmont Grievance Committee decision in the Alston case drew its essence from the contractual requirement of a written discharge document and from the Committee Rule requiring an employer to prove all essential elements of its case. [JA 102]. The Panel clearly followed precedent established in the *First Student* and *Coca-Cola* cases in concluding that a discharge letter is an essential element in a discharge case. [JA 193-208, 210-227, 370-373].

## D.    The Panel did not deprive Durham of a fair hearing

The Panel gave Durham the fair hearing required by its Rules. Attorney Blume had the opportunity to present all evidence she deemed "pertinent" to the discharge case. She did not consider the discharge letter "pertinent." Consistent with the CBA

and its precedent, the Panel considered the discharge letter "pertinent." Although the Panel decided the case on a Point of Order, the Point of Order was directed at the absence of a "pertinent" fact. The Panel decided the case entirely on the basis of the facts "presented" by Ms. Blume. That is all the Committee By-Laws require.

Durham erroneously argues that the Panel did not decide the case which was "submitted." [Durham Brief at 32]. Local 509's submission asserted that the "nature of complaint" was an "unjust termination." [JA 279]. The Panel found that there was an "unjust termination" because there was no evidence of a discharge letter. The Alston Award clearly resolves the issue "submitted," even if not on the rationale anticipated by either Durham or Local 509 when the grievance was filed. Permitting a litigant to pounce on unanticipated errors by opposing counsel does not deprive a losing party of a fair hearing.

Nor was Durham prejudiced by the Committee's failure to publish its decisions. [*See* Durham Brief at 34-35]. First, as permitted by the Supreme Court, the Committee decisions do not state a rationale. Publication would not educate even an avid reader. Second, when the District Court asked about the propriety of relying on unpublished decisions, counsel for Local 509 noted that unreported district court decisions are frequently cited. [JA 716-717]. The District Court then cited in its opinion an unreported district court decision involving Teamsters Local 592. [JA

728].  Third, many arbitration awards are not published, but are cited in future cases.
Fourth, as shown above, Durham was involved in a prior case in which a discharge
was set aside because of a procedural error involving the absence of a discharge
letter.  Finally, the CBA does not preclude the Committee from relying on its
precedent or upon any other arbitration or court decisions submitted to it.

Equally without merit is Durham's reliance upon *Mine Workers District 17 v.
Marrowbone Development Co.*, 232 F.3d 383, 388 (4th Cir. 2000). [Durham Brief at
35].  There the Court concluded that the arbitrator deprived the union of a "full and
fair hearing" because he conducted no hearing, refused to consider the evidence the
union sought to introduce, and erroneously decided that a prior court decision
controlled the case.  Here, the Piedmont Grievance Committee Panel was authorized
to resolve the Alston grievance within the limits of the CBA and the Committee's
Rules of Procedure.  Unlike the arbitrator in *Marrowbone*, the Panel permitted
Durham to present its entire case-in-chief.[10]  Indeed, Union President Fletcher was not
permitted to speak until Ms. Blume had completed her presentation. [JA 324].  Given
the *First Student* and *Coca Cola* precedent, the Piedmont Grievance Committee's

_____

[10]See *Century Indemnity Co. v. AXA Belgium*, 2012 U.S. Dist. LEXIS 136472
at *22 (S.D. N.Y. 2012), where the court cited *Marrowbone* as an "extreme example[]
of arbitrators refusing to hear evidence or conduct proceedings" and easily
distinguishable.

33

decision on the Union's Point of Order was not "fundamentally unfair." Permitting Attorney Blume a do-over that was not given to non-attorney King in *Coca-Cola* would have been "fundamentally unfair."

The Committee also followed precedent in refusing to permit Ms. Blume to correct her error as "rebuttal" to the Point of Order. The Committee does not allow a party to introduce new evidence after the conclusion of its case-in-chief except to rebut the other party's case-in-chief. [JA 261-261, 378-381, 422-425]. For example, if an employer's case-in-chief said that the parties never met to discuss an issue, the union could, on rebuttal, submit evidence of the meeting. But Local 509's Point of Order was that Durham had failed to submit the discharge letter as part of its case-in-chief. Belated submission of the discharge letter would correct the underlying defect, not challenge the factual accuracy of the Point of Order. [JA 488-489].[11] Even if the Court disagrees with the decision itself, it cannot conclude that the Panel was <u>not</u> trying to interpret the CBA and Rules and follow precedent.

Nor is there merit in Durham's contention that Panel member Shurling's questioning of Ms. Blume demonstrated such "bad faith" and "condescension" that the Award must be vacated. [Durham Brief at 36-37]. During the discussion of the

---

[11]Similarly, this Court has held that once a party has presented its case-in-chief, it may not cure defects in its case by introducing new evidence at rebuttal. *Allen v. Prince George's County*, 737 F.2d 1299, 1306 (4th Cir. 1984).

Point of Order, Mr. Shurling asked Ms. Blume whether she had read the Committee's Rules and knew that she could "present any and all evidence in support of your case." When she replied that she knew her rights, Mr. Shurling asked "And this is the only evidence you presented?" [JA 324-327].

Any seasoned advocate knows that judges and Justices commonly ask more pointed questions than Mr. Shurling did without being accused of bias and misconduct.[12] Furthermore, Mr. Shurling was essentially asking whether Ms. Blume knew that the Rules imposed the burden of proof on her and that she had to present the "pertinent facts." [JA 101-102].

Finally, Durham erroneously claims that post-hearing conversation and correspondence between Local 509 and Union Co-Chair Gibbs and Management Co-Chair Houvouras and Durham counsel Blume indicates corruption requiring setting aside the Award. [Durham Brief at 38-39]. Post-hearing and post-award *ex parte* communications cannot prove that the Award itself was the product of corruption or bad faith. It is undisputed that Durham did not comply with the Alston award. One reason for non-compliance was a professed ignorance of the impact of the award.

---

[12]See, e.g., JA 708:

THE COURT: So they had a better lawyer, so you get a do-over.
MR. ROBERTS: It's not a matter of having a better lawyer.
THE COURT: Somebody who knew what the precedent was.

Local 509's attempt to have the Committee Co-Chairs explain the impact of the granting of the Point of Order in no way impugns the Alston Award itself.

**E     Although Durham has expressly abandoned its public policy assertion, it has raised public policy to inflame sentiment against Ms. Alston**

Despite expressly withdrawing the argument that Ms. Alston's reinstatement would violate public policy [Durham Brief at 20, n. 6], Durham cites Local 509's concession that people should not use cell phones while driving [Durham Brief at 18, quoting JA 56]. Durham knows that Ms. Alston's reinstatement would <u>not</u> violate law and public policy. Durham cites Local 509's concession merely to inflame the general antagonism many drivers have against other drivers using cell phones.

**F.     If the Court vacates the Alston Award, it must remand the case to the Piedmont Grievance Committee**

Although we believe that the Court should enforce the Alston Award, we must address Durham's suggested "Remedy." If the Court vacates the Alton Award, the only appropriate remedy is a remand to the Piedmont Grievance Committee. Simply stated, the CBA expressly permits Local 509 to argue that discharge is excessive and unjust and allows Local 509 to submit any unresolved grievance to the Piedmont Grievance Committee. Given Durham's concession that discharge is not mandatory [Durham Brief at 23; JA 78] and the contractual authority of an arbitrator to conclude

36

that Durham's penalty is excessive, the Court cannot accept Durham's contention that the "plain language of the CBA" requires the denial of Local 509's grievance and that remand would be "an act of futility." [Durham Brief at 47-48]. The Court's function is not to interpret the CBA; it must allow the Piedmont Grievance Committee to interpret the contract even if the Court believes that the grievance is frivolous. *Steelworkers v. American Manufacturing Co.*, 363 U.S. 564, 568 (1960).

## CONCLUSION

For the reasons stated herein, the Court should affirm the decisions of the District Court and direct Durham to comply with the arbitration awards by reinstating Ms. Alston with back pay and seniority.

Respectfully submitted,

/s/ Jonathan G. Axelrod
Jonathan G. Axelrod
Beins, Axelrod, P.C.
1625 Massachusetts Avenue, Suite 500
Washington, DC   20036
202-328-7222
202-328-7030 (telecopier)

Counsel for Teamsters Local Union No. 509

December 14, 2015

## REQUEST FOR ORAL ARGUMENT

The Union respectfully requests that the Court allow oral argument in this

matter.

Respectfully submitted,

    /s/ Jonathan G. Axelrod
Jonathan G. Axelrod
Beins, Axelrod, P.C.
1625 Massachusetts Avenue, Suite 500
Washington, DC   20036
202-328-7222
202-328-7030 (telecopier)

Counsel for Teamsters Local Union No. 509

39

# CERTIFICATE OF COMPLIANCE

1.     This brief has been prepared using fourteen point, proportionally spaced serif typeface (Times New Roman) using WordPerfect 7.

2.     EXCLUSIVE of the corporate disclosure statement; table of contents; table of citations; statement with respect to oral argument; any addendum containing statutes, rules, or regulations; and the certificate of service, this Brief of Appellee contains 8,406 words.

I understand that a material misrepresentation can result in the Court's striking the Brief and imposing sanctions.  If the Court so directs, I will provide an electronic version of the Brief and/or a copy of the word or line printout.


        /s/ Jonathan G. Axelrod
        Jonathan G. Axelrod

## CERTIFICATE OF SERVICE

I hereby certify that two copies of the foregoing Brief for the Appellee were mailed, first class, postage prepaid, this 14th day of September 2014 to:


 /s/ Jonathan G. Axelrod

Jonathan G. Axelrod